Rivera de Martínez, Juez Ponente
*939 TEXTO COMPLETO DE LA SENTENCIA
Los recurrentes, un grupo de empleados de la Administración de Servicios de Salud Mental y Contra la Adicción, en adelante ASSMCA, que fueron trasladados a la Administración de Corrección, solicitan a través del presente recurso que revoquemos una resolución dictada por la Junta de Apelaciones del Sistema de Administración de Personal, en adelante JASAP, el 3 de mayo de 1996.
Mediante dicha resolución la referida Junta de Apelaciones resolvió que los apelantes, aquí recurrentes, no tenían derecho a un aumento concedido por su nuevo patrono, la Administración de Corrección, porque no cumplían con el requisito de llevar un (1) año trabajando en la agencia. Precisamente, ASSMCA había concedido otro aumento que tampoco les benefició porque hacía dos (2) meses que se había efectuado el traslado. Solicitada oportunamente la reconsideración, JASAP confirmó la resolución original.
El análisis de los planteamientos requiere un breve resumen del marco legal que pautó la génesis del presente recurso.
I
El 29 de junio de 1994, el Gobernador de Puerto Rico, en cumplimiento de la Resolución Conjunta 231 de 24 de mayo de 1994, firmó la Orden Ejecutiva OE-1994-32 para establecer lo que se denominó el Programa de Aumentos por Productividad y Eficiencia en el Servicio Público. Dicha orden entró en vigor en julio de 1994.
Entre otras cosas, la referida orden dispuso que sería responsabilidad de cada agencia, previo a la implantación del programa, someter a la Oficina de Presupuesto y Gerencia, para su aprobación, el presupuesto ejecutivo del año fiscal en el cual se detallarían los recursos reservados para cumplir con la misma.
El 15 de agosto de 1994, el Gobernador firmó otra Orden Ejecutiva identificada como OE-1994-42, mediante la cual se dispuso la transferencia de personal cualificado, facilidades físicas y equipo de la ASSMCA a la Administración de Corrección. Entre otras cosas, la orden disponía que las agencias aludidas establecerían, mediante convenio, los detalles de la transferencia y que no se alterarían ni menoscabarían los derechos adquiridos del personal transferido. En su fase contractual la transferencia no se efectuó hasta noviembre de 1994. En su fase práctica el traslado de los empleados se materializó el 1 de marzo de 1995. Como resultado de lo anterior, los recurrentes en este caso formaron parte del grupo de empleados de ASSMCA que fue transferido a la Administración de Corrección.
Efectivo el 1 de mayo de 1995, exactamente dos meses después de haberse realizado el traslado de los recurrentes, la ASSMCA otorgó a sus empleados un aumento por productividad de $100. Los recurrentes fueron excluidos del aumento porque ya no eran empleados de la agencia. Así las cosas, en agosto de 1995, la Administración de Corrección también concedió a sus empleados un aumento por productividad de $125. Los recurrentes, a pesar de haber sido recomendados por su supervisor por haber prestado servicios satisfactorios y de excelencia, no recibieron el aumento porque no llevaban un año laborando en la agencia, según los criterios establecidos para la concesión del mismo.
Los recurrentes presentaron una apelación ante JASAP en la que básicamente alegaron que tenían derecho al aumento porque fueron trasladados por necesidades del servicio y no por voluntad propia; que su servicio en el gobierno había sido ininterrumpido por más de 8 años como personal permanente de carrera y que en el convenio que autorizó el traslado se garantizó que no se alterarían ni menoscabarían los derechos y privilegios adquiridos de los empleados. Argumentaron, además, que por ser empleados regulares trasladados con todos los derechos que habían adquirido, no tuvieron que pasar por período probatorio alguno y su labor continuó sin interrupción de una agencia a otra.
*940 JASAP, aunque reconoció la prestación de servicios excelentes por parte de los entonces apelantes, determinó sin embargo, que no cumplían el requisito válido de un (1) año de trabajo en la agencia y por ello no tenían derecho a la concesión de un remedio. Sugirió a la Administración de Corrección concederles aumentos al cumplir un año en dicha agencia y declaró "no ha lugar" la apelación, al igual que una solicitud de reconsideración de los apelantes. En la resolución denegando la reconsideración, sugirió a los apelantes acudir al Procurador del Ciudadano (Ombusman).
Resolvió la cuestión con la comparecencia en los méritos de la Administración de Correción. La ASSMCA sólo compareció en dos ocasiones para solicitar el archivo de la apelación a base de una supuesta violación a un término concedido por IASAP a los apelantes. Nunca compareció en los méritos ante la agencia, no empece haber sido incluida en la reclamación y notificada de todos los escritos. El 21 de octubre de 1996, emitimos resolución para que la ASSMCA mostrara causa por lo cual no debíamos revocar la resolución recurrida. Habiendo respondido la agencia a nuestro requerimiento estamos en posición de resolver.
De la resolución de JASAP comparecen ante nos los recurrentes, alegando que se cometieron los siguientes errores:

"1. Erró la Honorable Junta de Apelaciones del Sistema de Administración de Personal al desestimar las apelaciones de unos servidores públicos de experiencia a los que reconoce excelencia en su desempeño, a pesar de que fueron privados de un aumento salarial en forma injusta, arbitraria, discriminatoria y contraria al principio de mérito y a raíz de ser víctima de un traslado por necesidades de servicio donde se les garantizó que no se les afectarían sus derechos.

2. Erró la Honorable Junta de Apelaciones del Sistema de Administración de Personal al concluir que no procedía concederle a los apelantes-recurrentes el aumento por productividad dispuesto por la Orden Ejecutiva del Gobernador de Puerto Rico."

II
La Resolución Conjunta 231 de 24 de mayo de 1994 dispuso en su Artículo 3, lo siguiente:
"Como una modalidad independiente y adicional a los métodos de compensación alternos concedidos por leyes especiales, revisión de planes de retribución, y pasos por mérito, y la Ley Núm. 89 de 12 de julio de 1979, según enmendada, conocida como Ley de Retribución Uniforme, se faculta a cada agencia a reservar hasta un máximo de cuatro (4) por ciento de su presupuesto de gastos de funcionamiento de todas sus fuentes de recursos, para que conforme al programa por productividad y eficiencia a ser instituido mediante orden ejecutiva del gobernador [sic] y los ahorros logrados en cada agencia, conceda aumentos de sueldo a su personal, empezando en las escalas más bajas. Todas las agencias a las que aplica esta disposición obtendrán autorización de la Oficina de Presupuesto y Gerencia para la utilización de los recursos que esta ley les faculta a reservar mediante la aprobación de su presupuesto ejecutivo. Los aumentos que sean concedidos conforme a este Artículo no estarán sujetos a las disposiciones de la Ley Núm. 89 antes mencionada. La mejoría salarial alcanzada deberá ser de carácter permanente y no un bono; no constituirá necesariamente un ajuste a la escala salarial; no será impedimento para cualquier otro beneficio al cual el empleado tenga derecho, según disposición de otras leyes aplicables; se concederá por unidad esencial de trabajo, la que será de 100 empleados o más, excepto las agencias que tengan una cantidad menor, en cuyo caso ésta será la unidad; y se faculta a las agencias para determinar el procedimiento y criterios que utilizarán en la implementación del programa, los que deberán ser aprobados por la Oficina de Presupuesto y Gerencia". (Enfasis suplido).
Fue a base de la citada disposición que el Gobernador firmó la Orden Ejecutiva OE-1994-32. En los "por cuanto" de dicha orden se expresa el propósito de lograr un mejoramiento salarial de los empleados públicos mediante diversas opciones que promuevan la mayor productividad, a fin de mejorar a su vez la calidad del servicio al pueblo. Este propósito, según surge, está enmarcado en la política pública encaminada a propiciar mejores condiciones de trabajo a los empleados públicos, a fin de realzar su autoestima y mejorar su capacitación, productividad y remuneración. También está cimentado en el interés que existe en promover el marco general de políticas, leyes y reglamentación *941 que aumenten la capacidad competitiva y productiva de los empleados públicos. Se ha sostenido que la facultad del Gobernador para emitir órdenes ejecutivas, mediante las cuales dispone la realización de determinados actos, emana de los poderes que le confieren las leyes y de los poderes inherentes a su cargo. Dichas órdenes tienen efecto de ley, por lo que las normas de interpretación de leyes le son igualmente aplicables. Opinión del Secretario de Justicia Núm. 25 de 1991, reiterando el criterio expuesto en las Opiniones del Secretario de Justicia Núms. 1985-10, 1984-31 y 1981-22. Tampoco podemos perder de vista los principios de interpretación estatutaria enunciativos de que la mejor manera de servir a la ley es interpretarla de forma que se realice su idea animadora. En consonancia con lo anterior, se ha establecido que al interpretarse una disposición específica de una ley, debe tenerse en cuenta cuál ha sido el propósito del legislador al aprobarla de suerte que se logre ese propósito. 
En el presente caso debemos indagar el propósito tanto de la R.C. 231 como de la orden Ejecutiva OE-1994-32, ya que ninguna de las dos contempló la posibilidad de que ocurrieran traslados entre las agencias durante el proceso de evaluación y concesión de los aumentos.
De la lectura conjunta del Artículo 3 de la R.C. 231 y de la OR-1994-32 puede inferirse una actitud liberal en cuanto a la concesión del aumento por productividad y eficiencia. Por esa razón la R.C. 231 no sujetó los aumentos a la Ley Núm. 89 de 12 de julio de 1979, según enmendada, conocida como Ley de Retribución Uniforme, ya que ésta dispone una serie de requisitos para fijar las escalas de retribución, tales como niveles de responsabilidad y complejidad de las funciones; cualificaciones necesarias para el desempeño de las mismas, dificultades existentes en el reclutamiento y retención de personal en las diferentes clases de puestos, condiciones de trabajo; oportunidades de ascenso existente; sueldos prevalecientes y otras.
También se dispuso por la R.C. 231, que el aumento no constituiría necesariamente un ajuste a la escala salarial y que no sería impedimento para recibir cualquier otro beneficio. Resulta de gran importancia el hecho de que el aumento se concedería "por unidad esencial de trabajo, la que será de (cien) 100 empleados o más, excepto las agencias que tengan una cantidad menor, en cuyo caso ésta será la unidad". Esto quiere decir que el aumento se extendería a unidades con 100 o más empleados y, por excepción, a, las que tuvieren una cantidad menor, que serían también una "unidad de trabajo". Al establecer de este modo qué unidades estarían incluidas en el aumento, quedaron todas debidamente cualificadas, pues evidentemente se les concedería lo mismo si tenían más de 100 que si tenían menos de esa cantidad. La intención de hacer una distribución que pudiera beneficiar, si no a todos, a la más amplia extensión de los servidores públicos, es patente.
De otra parte, la OE-1994-32 en su cuarto "Por Cuanto" expresó el compromiso de la Administración de lograr el mejoramiento salarial de los empleados públicos mediante diversas opciones. En su sexto "Por Cuanto" hizo claro el compromiso como Gobierno facilitador de promover el establecimiento de unos procesos simples que no requirieran reglamentación adicional, excesiva e innecesaria y que permitieran la incorporación de nuevos métodos, conforme a las particularidades de cada organismo.
No hay duda de que la intención ejecutiva fue que los aumentos no estuvieran sometidos a procedimientos que, en su rigor, asfixiaran el alivio salarial que se quería hacer efectivo. Ampararse en el mecanismo del traslado de los recurrentes de una agencia a otra y negarles el aumento tiene el efecto de frustrar la clara intención ejecutiva.
Bajo la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, conocida como Ley de Personal del Servicio Público, y bajo los reglamentos que la misma autorizó promulgar, un traslado debe garantizar la continuidad de los servicios, debe hacerse para beneficio del empleado y sin producirle al mismo problemas económicos sustanciales.
La Ley de Personal, supra, preceptúa como sigue:

"Mediante la aplicación de la política expuesta en la see. 1311 de este título, se persigue alcanzar como meta los más altos niveles de excelencia, eficiencia y productividad en el servicio público, realizando los siguientes objetivos:

*942
(1) Lograr que la administración pública se rija por criterios de la mayor uniformidad, equidad y justicia.

(2) Mantener un clima de armonía y satisfacción en el trabajo, que redunde en un alto grado de motivación y espíritu de servicio entre los empleados.

(3) Mantener la continuidad y la regularidad en la prestación de los servicios públicos." (Enfasis suplido).
Surge expresamente que entre los objetivos de la citada ley están la equidad y la justicia como criterios que deben regir la administración pública, así como mantener un clima que redunde en un alto grado de motivación y espíritu de servicio entre los empleados y la continuidad y regularidad en la prestación de los servicios. La denegación del aumento a los recurrentes no sólo derrota los objetivos de la Ley de Personal, sino que la contradice, al alegarse que los empleados no tenían un año de servicio en la agencia, a pesar de que dicha ley tiene como objetivo mantener la continuidad de los servicios en tales casos. Si la ley procura esa continuidad, resulta en un contrasentido ía interpretación restrictiva de que el traslado de los recurrentes interrumpió el servicio. Por el contrario, la interpretación más razonable y lógica es que se trata de un servicio ininterrumpido, ya que la aplicación del criterio de un año de servicio puede tener sentido en el caso del personal de nuevo ingreso, pero no lo tiene cuando se aplica a empleados que ya estaban activos en el servicio público.
Sobre los traslados, la Ley de Personal, supra, expresa:

"La administración de personal deberá proveer oportunidades y mecanismos para el ascenso de los empleados. Así también deberá proveer para la mejor utilización de los empleados a través de los traslados.

Para el logro de estos objetivos se establecen las siguientes disposiciones:

(1 )■■■

(2)...

(3)...

(4)Se permitirá efectuar traslados de empleados entre agencias comprendidas en la Administración Central, entre los Administradores Individuales, y entre éstos y las agencias de la Administración Central y viceversa, conforme a las normas que se establezcan mediante reglamento.

(5)Los traslados no podrán ser utilizados como medida disciplinaria ni podrán hacerse arbitrariamente. Sólo podrán hacerse a solicitud del empleado, o cuando respondan a necesidades del Servicio según se establezca mediante reglamento y el traslado no resulte onero para el empleado. Se exceptúan de esta disposición aquellos sistemas en que se utilice el concepto de rango." (Enfasis suplido).
El último inciso de la disposición transcrita es muy claro en dos aspectos: 1) el traslado no puede ser oneroso para el empleado y 2) cuando el traslado responda a necesidades del servicio el mismo se realizará según se establezca por reglamento. Veamos que dispone el reglamento.
El Reglamento de Personal de la Administración Central, Núm. 2185, aprobado el 30 de noviembre de 1976, en su artículo remite a otro denominado, Reglamento de Personal: Areas Esenciales al Principio de Mérito, identificado como el Núm. 2186, para la reglamentación de los traslados. Este último dispone, en lo pertinente:

"Sección 8.2 - TRASLADOS

La Administración Central y los Administradores Individuales usarán los traslados como 
*943
mecanismos para la ubicación de los empleados en los puestos donde deriven la mayor satisfacción de su trabajo y contribuyan con sus esfuerzos a realizar los objetivos de las agencias con la mayor eficiencia.

1. Objetivo de los Traslados

El traslado podrá efectuarse para beneficio del empleado, a solicitud de éste, o respondiendo a necesidades del servicio en situaciones tales como las siguientes:

a)...

b) Cuando se eliminen funciones o programas por efecto de reorganizaciones en el Gobierno o de una agencia y cuando en el proceso de decretar cesantías sea necesario reubicar empleados.

c)...

d)...

2....

3. Normas para los Traslados

Las siguientes normas regirán los traslados:

a) En ningún caso se utilizarán los traslados como medida discplinaria ni podrán hacerse arbitrariamente.

b) Será responsabilidad de la Administración Central y de cada Administrador Individual establecer procedimientos que aseguren la imparcialidad en los traslados que se propongan efectuar respondiendo a necesidades del servicio, con atención especial a aspectos tales como los que siguen, a los efectos de evitar que la acción de traslado le produzca al empleado problemas económicos sustanciales sin que se le provea la compensación adecuada:"

Las disposiciones anteriores, examinadas en conjunto, son claras en cuanto al hecho de que un traslado no debe resultar oneroso para el empleado; que se usará para ubicar al empleado en puestos donde derive mayor satisfacción de su trabajo; que se puede hacer para su beneficio y que se tiene que evitar que si se hace por necesidades del servicio sea una acción que le produzca al empleado problemas económicos sin que se le provea la compensación adecuada.
Debemos tomar en consideración, además, que la Ley de Personal, supra, autoriza a transferir la licencia por vacaciones y por enfermedad acumulada por un empleado al pasar de una agencia a otra en el Servicio Público. Estas licencias se computan a base del tiempo trabajado, por lo que la transferencia de las licencias supone el reconocimiento de dicho tiempo para acumularlas. Sería una contradicción que el tiempo trabajado y las licencias acumuladas sean transferibles por mandato de ley, lo que implica la continuidad en el servicio, mientras que por reglamento se negará el derecho a un empleado, en las circunstancias reseñadas, a recibir un aumento de sueldo por considerarse interrumpido el servicio. Por ello, en el caso de empleados ya activos en el servicio público, no tenemos duda de que el tiempo trabajado en la agencia de origen debe ser reconocido, por analogía, por la segunda agencia para efectos de la concesión del aumento, en vista de que el servicio no se ha interrumpido.
De la prueba en el presente caso, a la luz de las disposiciones legales precitadas, podemos concluir que el traslado de los recurrentes no constituyó una interrupción de su servicio en el Gobierno, por lo cual debió acreditársele el tiempo trabajado en ASSMCA para completar el año requerido por la Administración de Corrección. De otra parte, el traslado no puede ser oneroso y no puede producirle al empleado problemas económicos. En este caso, el traslado quebrantó esa disposición y fue oneroso. *944 En su acepción general, oneroso significa: "pesado, molesto, gravoso". El traslado generó una situación molesta y gravosa para los recurrentes por cuanto los colocó en un limbo administrativo entre las dos agencias, viendo así frustrada su oportunidad de mejoramiento salarial como resultado de una situación que ellos no crearon.
El momento en que se hizo el traslado y la negativa a acreditarles el tiempo trabajado, conduce al fracaso de los objetivos expresamente dispuestos en la Ley de Personal y los otros preceptos legales citados anteriormente, que propenden a establecer, que la administración pública se rija por criterios de uniformidad, equidad y justicia y que se mantenga un clima que redunde en un alto grado de motivación y espíritu de servicio entre los empleados. También frustra la intención del Ejecutivo al establecer el Programa de Aumentos por Productividad y Eficiencia en el Servicio Público.
La justicia en este caso sólo puede lograrse si ordenamos a la Administración de Corrección que reconozca el tiempo trabajado por los recurrentes en su agencia de origen y que los evalúe según el procedimiento establecido para determinar si, a la luz de los criterios reglamentarios, son acreedores al aumento por productividad y eficiencia. A fin de evitar que la acción instada por los recurrentes tenga algún peso en la evaluación que se ordena, se evaluará a los empleados tomando en cuenta solamente su desempeño y ejecutorias anteriores al mes de agosto de 1994, fecha en que la Administración de Corrección concedió el aumento a sus empleados.
ni
Por los fundamentos antes expuestos, se expide el auto solicitado y se revoca la resolución recurrida. Se devuelve el caso al foro administrativo para que la agencia concernida tome las acciones necesarias consistentes con la presente sentencia.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97 DTA 34
1. Del expediente no surge el día exacto del convenio de transferencia.
2. Resolución emitida el 29 de mayo de 1996, notificada el 30 del mismo mes y año.
3. Presupuesto de Gastos Ordinarios - 1994. Proveyendo para la asignación de gastos ordinarios de funcionamiento de las Ramas Legislativa, judicial y Ejecutiva del Estado Libre Asociado de Puerto Rico durante el año fiscal que termina el 30 de junio de 1995.
4. La Opiniones del Secretario de Justicia, aunque no son mandatorias para los tribunales, son de gran valor persuasivo. "Por lo general los funcionarios que solicitan las opiniones siguen el curso señalado por éstas, por lo que sirven mucho para predecir el comportamiento de las diversas agencias de gobierno en cuanto a problemas específicos". Gorrín Peralta, Carlos. Fuentes y Proceso de Investigación Jurídica, Equity Publishing Co., 1991, pág. 258.
5. PPD v. Ferré, Gobernador, 98 D.P.R. 338 (1970).
6. Para una extensa lista de casos citados sobre este tema, véase, Aprobación e Interpretación de las Leyes en Puerto Rico, R. Elfren Bernier y José A. Cuevas Segarra, Segunda Edición, Vol. II, Publicaciones JTS, 1987, págs. 245-246.
7.3 L.P.R.A. Sec. 760a, art. 2.
8. 3 L.P.R.A. Secs. 1301 etseq.
*945 9. 3 L.P.R.A. Sec. 1312.
10. 3 L.P.R.A. Sec. 1334.
11. Ley Núm. 84 de 23 de junio de 1958, sec. 2, 3 L.P.R.A. 696, la cual no quedo derogada por la Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. 1301 et seq.
12. Diccionario General Ilustrado de la Lengua Española, Primera Edición, Bibliograf, Barcelona, Reimpresión de septiembre 1994.